Clark A. BAILEY, Appellant,

v.

Sandra GARDEBRING, Commissioner of Human Services, and State of Minnesota, Appellees.

Clark Albert BAILEY, Appellant,

v.

Arthur E. NOOT, Orville Pung, Charles G. Sheppard, Leslie R. Green, William F. McRae, Bruce M. Beltt, Richard A. Alstad, James Bruton, Henry Greencrow, and Dorothy Skwiera, Appellees.

Nos. 89–5219, 89–5403.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1990.

Decided July 26, 1991.

Douglas Peine, St. Paul, Minn., for Bailey in No. 89–5219.

Mary L. Stanislav, Minneapolis, Minn., for Gardebring and State of Minn.

Alan Anderson, Minneapolis, Minn., for Bailey in No. 89–5403; James D. O'Connor, on brief.

Jean Whitney and Richard Slowes, St. Paul, Minn., argued, for Noot, et al.; Catharine F. Haukedahl, St. Paul, Minn., on brief.

Before LAY, Chief Judge, BOWMAN, Circuit Judge, and STUART,* District Judge.

BOWMAN, Circuit Judge.

In the latter part of 1976 Clark Albert Bailey kidnapped and sexually abused a thirteen-year-old girl in Minnesota and murdered her in Iowa. He pled guilty in Minnesota to criminal sexual conduct in the first degree and kidnapping and in Iowa to second degree murder. For these offenses he received sentences of twenty years, forty years, and forty years, respectively. All sentences are to be served concurrently.

After sentencing Bailey for his Minnesota offenses, the Hennepin County District Court stayed the sentences to allow the probate court to obtain a psychiatric examination of Bailey for possible civil commitment. Pursuant to Minnesota Statutes §§ 526.09–526.11 (1976), the probate court committed Bailey to the Minnesota Security Hospital as a "psychopathic personality" on July 13, 1977. While at the hospital, Bailey saw a number of psychiatrists and psychologists and was an intermittent participant in various treatment programs— most of which he dropped out of citing nonspecific "religious objections."

Approximately two years later, the Commissioner of Public Welfare, who has jurisdiction over the Security Hospital, ordered Bailey's transfer to the Department of Corrections ("DOC") to serve his prison sentence. The transfer was not effected until May 18, 1981 because of, first, Bailey's extradition to Iowa for his guilty plea and, second, Bailey's initiation of various legal challenges to the statutory authority for his transfer, concluding with Bailey's transfer in accordance with procedures prescribed by the Minnesota Supreme Court.

Bailey is currently incarcerated at the Minnesota Correctional Facility where he is serving concurrently his various sentences for sexual abuse, kidnapping, and murder. Various treatment programs are available there, though none specifically geared to sexual offenders. He remains under civil commitment as a psychopathic personality and thus will be subject to the jurisdiction of the Commissioner of Public Welfare upon finishing his prison sentence.

To this Court, Bailey brings two separate appeals. His first appeal (No. 89–5219) is from the District Court's[1] denial of his federal habeas corpus petition under 28 U.S.C. § 2254 (1988). His other appeal (No. 89–5403) is from the District Court's grant of summary judgment for defendants on his various civil rights claims under 42 U.S.C. § 1983 (1988). This opinion covers both of these appeals, and in both we affirm the decision of the District Court.[2]

I.

We begin with Bailey's habeas case. After exhausting his state remedies, Bailey brought a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that his civil commitment necessarily was discharged under Minnesota law when he was transferred from the jurisdiction of the Commissioner of Public Welfare to the DOC and, in addition, that Minnesota law does not permit the commitment of a convicted criminal as a "psychopathic personality"—which carries an indeterminate commitment period—but only as a "sex offender"—which carries a period of commitment

---

* The HONORABLE WILLIAM C. STUART, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota, presided over both cases.

2. References to briefs, addenda, and appendices will be distinguished by a "I" (No. 89–5219) or a "II" (No. 89–5403).

limited to the length of the penal sentence. Bailey also contends that his dual commitment violates the Due Process Clause of the United States Constitution, and that his commitment as a psychopathic personality violates both the Due Process and Equal Protection Clauses of the Constitution. The District Court—as had the state courts before it—rejected Bailey's claims, holding that his dual commitment as well as his commitment as a psychopathic personality were proper under Minnesota law and did not violate the Constitution. For reversal, Bailey repeats the arguments he made in the District Court. Assuming for purposes of this appeal that Bailey is "in custody" on his civil commitment within the meaning of 28 U.S.C. § 2254(a), *see Maleng v. Cook,* 490 U.S. 488, 490–94, 109 S.Ct. 1923, 1925–27, 104 L.Ed.2d 540 (1989); *Peyton v. Rowe,* 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968), we agree with the District Court that his claims are without merit.

■ Minnesota state courts have interpreted the state civil commitment statutes as not requiring that a civil commitment order be discharged before transferring a committee to the custody of the DOC. *Bailey v. Gardebring,* No. C8–87–1839, 1988 WL 19366 (Minn.Ct.App. Mar. 8, 1988) *reprinted in* Appellee's Appendix I at A–1. Unless the underlying statutes are constitutionally defective we must defer to such an interpretation. *See Parkerson v. Carrouth,* 782 F.2d 1449, 1455 (8th Cir.1986) ("[A]bsent an infirmity of constitutional dimensions in th[e] law, it is not for a federal court to say that a rule established by [a state] ... is unwise."); *Stoianoff v. Montana,* 695 F.2d 1214, 1218 (9th Cir.1983) ("It is, of course, solely within the province of the state courts to authoritatively construe state legislation."). Here there is no constitutional defect. The Supreme Court has determined that a state may confine people who pose a threat to themselves and others until the danger has dissipated. *See Addington v. Texas,* 441 U.S. 418, 426, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). Minnesota's civil commitment statutes are constitutional, and Minnesota's interpretation of these statutes allowing Bailey to be transferred to the DOC without being discharged from his civil commitment thus is immune from attack in this Court.

■ The same analysis applies to Bailey's claim that he was improperly committed under Minnesota's civil commitment statute, section 526.09. As the underlying statute is constitutional, we defer to the state court's interpretation to allow Bailey's commitment pursuant to section 526.-09. Finally, with respect to Bailey's equal protection claim, as the District Court aptly put it, "[n]o constitutional right is violated when persons who suffer from severe disorders, such as petitioner, are treated differently from persons with less serious conditions." *Bailey v. Gardebring,* No. 4–88–637 (D.Minn. Jan. 13, 1989), *reprinted in* Appellant's Addendum I at A.2, A.12.

We affirm the District Court's denial of Bailey's application for writ of habeas corpus.

## II.

Bailey also appeals the District Court's grant of summary judgment against him on his various civil rights claims under 42 U.S.C. § 1983 (1988). Bailey argues that as either a civil or criminal committee he has a constitutional right to psychiatric treatment and that the failure of various officials at both the Security Hospital and the Correctional Facility to provide him with such treatment is a violation of his Eighth and Fourteenth Amendment rights. He also raises several arguments regarding his parole date. As there is no factual dispute and we find that the defendants are entitled to judgment as a matter of law on all of Bailey's claims, *see* Fed.R.Civ.P. 56(c), we affirm.

## A.

■ We turn first to Bailey's asserted right to treatment in the civil context. Bailey claims that his need for psychiatric treatment to overcome a "sexual offender condition" is analogous to a need for treatment of a bleeding ulcer or diabetes. The defendant hospital administrators argue

that they did not violate Bailey's constitutional right to receive psychiatric treatment.

The Supreme Court addressed the issue of a right to behavioral-modification treatment in the context of civil commitment in *Youngberg v. Romeo.* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). Romeo, the civilly committed resident in *Youngberg,* was a thirty-three-year-old man with the mental capacity of an eighteen-month-old child. He was not committed because he posed any particular danger to the community but because of his severe retardation. Romeo had sustained injuries numerous times during his commitment, some self-inflicted and some from residents reacting to his aggressive behavior. To prevent Romeo from harming himself or other residents, he occasionally had been restrained with soft arm shackles. Romeo argued that training programs aimed at his self-control and interaction problems would have lessened the need for these restraints.[3] The Court held that the Constitution required only such "minimally adequate training ... as may be reasonable in light of [the] liberty interest[ ] in safety and freedom from unreasonable restraints." 457 U.S. at 322, 102 S.Ct. at 2461.[4]

Here, Bailey was committed as a psychopathic personality and was neither in danger during his civil commitment nor was he subject to any restraints beyond the ordinary incidents of any involuntary confinement. The decisions of the psychiatrists at the Security Hospital regarding his treatment were presumptively valid, *see Youngberg,* 457 U.S. at 323, 102 S.Ct. at 2462, and he has not made any showing to overcome this presumption of validity. In addition, the legitimacy of Bailey's commitment is not in doubt. He has manifested his dangerousness by, *inter alia,* sexually abusing, kidnapping, and murdering a thirteen-year-old girl.[5] His confinement at the Security Hospital was founded on the peril he would pose to the community, and particularly to its children, if released. In these circumstances Bailey, as a dangerous psychopath civilly committed for the purpose of safekeeping, simply does not have the constitutional right he claims. The District Court therefore was correct in its grant of summary judgment for defendants on Bailey's section 1983 claims based on the professional judgments made concerning his psychiatric treatment during his civil commitment.

## B.

██ Bailey also claims that the prison administrators are under a constitutional obligation to provide him with psychiatric treatment geared towards sexual offenders and that their failure to do so constitutes cruel and unusual punishment. He argues that the District Court erred in holding that

---

**3.** His treatment at the hospital once had included such training programs as well as programs teaching him feeding, showering, drying, dressing, and toilet training. *Youngberg v. Romeo,* 457 U.S. 307, 311 n. 7, 102 S.Ct. 2452, 2455 n. 7, 73 L.Ed.2d 28 (1982).

**4.** Even this narrow right to treatment—explicitly tied to the avoidance of "unreasonable" restraints such as arm shackles—was further attenuated by the extreme deference the Court held was to be accorded qualified professionals at state institutions: "[W]e emphasize that courts must show deference to the judgment exercised by a qualified professional. By so limiting judicial review of challenges to conditions in state institutions, interference by the federal judiciary with the internal operations of these institutions should be minimized." 457 U.S. at 322, 102 S.Ct. at 2461. Bailey can succeed on his claim only if he can show that the "presumptively valid" decision of the hospital

psychiatrists not to provide the sort of treatment he seeks was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." 457 U.S. at 323, 102 S.Ct. at 2462. We agree with the District Court "that there is insufficient evidence for a reasonable factfinder to conclude that the DHS defendants' decisions" were a substantial departure from accepted professional practice. *Bailey v. Noot,* No. 4-85-1245 (D.Minn. June 28, 1989), *reprinted in* Appellant's Addendum II at A58, A67.

**5.** Other signs of Bailey's dangerousness include his sexually abusing his young daughter (Appellee's Appendix II at A-144), allegedly forcing homosexual activity on other residents at the Security Hospital (Appellee's Appendix II at A-74), and stating that he "[doesn't] really want th[e] treatment" for his pedophilia. (Appellee's Appendix II at A-75).

defendants are entitled to summary judgment on this branch of his case. We disagree.

It is of course true that having incarcerated a prisoner, and thereby having prevented him from obtaining treatment on his own, the state may be found to have inflicted cruel and unusual punishment by failing to provide needed medical treatment. Bailey's allegations, however, viewed in the light most favorable to him, do not present a factual dispute. In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." 429 U.S. at 104, 97 S.Ct. at 291 (citation omitted). The right to treatment recognized in *Estelle* has limits that Bailey's claimed right to psychiatric treatment exceeds.

██ That the prison administrators' failure to provide medical care must rise to the level of "deliberate indifference" presupposes the availability of a cure or at least some accepted form of treatment for the prisoner's medical needs: if there is nothing that can be done, or no accepted way of treating the condition, "deliberate indifference" is indistinguishable from steadfast vigilance. A condition for which there is no known or generally recognized method of treatment cannot serve as a predicate for the conclusion that failure to provide treatment constitutes "deliberate indifference to the serious medical needs of prisoners." *Cf. City of Canton v. Harris*, 489 U.S. 378, 397, 109 S.Ct. 1197, 1209, 103 L.Ed.2d 412 (1989) (O'Connor, J., concurring) ("The lack of training [in the diagnosis of mental illness] is not the kind of omission that can be characterized, in and of itself, as a 'deliberate indifference' to constitutional rights."); *Eckerhart v. Hensley*, 475 F.Supp. 908, 914–15 n. 16 (W.D.Mo.1979) ("[T]he state's inability to provide a dangerous person with a reasonable opportunity to be cured or to improve his mental condition because no effective treatment is known would not render un-

constitutional his involuntary confinement for the protection of himself or others.").

Here, treatment programs in the prison are available to Bailey. None of these programs, however, is specifically directed toward psychopathic individuals who have committed sexual offenses. But there is in this record no evidence of the existence of any cure or even of any generally accepted method of treatment for sexual psychopaths like Bailey. Hence, the failure of the prison administrators to provide Bailey with the precisely tailored psychiatric treatment he seeks cannot fairly be described as "deliberate indifference."

██ Absent a reliable medical diagnosis of some serious mental illness that can be alleviated, at least symptomatically, by some known treatment, prisoners have no constitutional right to state-provided psychiatric treatment, and we do not understand *Estelle* to hold otherwise. On this record, we are satisfied that the District Court correctly granted summary judgment for defendants on the ground that they were not "deliberately indifferent to Bailey's serious medical needs." *Bailey v. Noot*, No. 4–85–1245 (D.Minn. June 28, 1989), *reprinted in* Appellant's Addendum II at A58, A67.

### C.

Bailey's remaining claims, which the District Court also rejected, relate to his eligibility for parole. He argues that certain changes in parole review procedures effected during his incarceration violate the Ex Post Facto Clause; that the failure of the paroling authority to grant him notice and an opportunity to be heard prior to setting his release date violated his due process rights; and that the paroling authority also violated Bailey's due process rights by conditioning his parole on a finding that Bailey is "no longer a danger to the public in general and/or young females specifically." Appellant's Appendix II at 173. We find no merit in any of these claims.

### 1.

██ Bailey's contention that the Ex Post Facto Clause, U.S. Const. art. I, § 9, cl. 3,

has been violated concerns the alteration in procedures governing grants of parole at the Minnesota Correctional Facility. When Bailey was first admitted to the Correctional Facility, paroling authority was vested in the Minnesota Corrections Board ("MCB"). Soon thereafter the Minnesota legislature abolished that body and transferred paroling authority to the Commissioner of the Minnesota Department of Corrections. Both the MCB and now the Commissioner had (have) the power to "parole any person sentenced to confinement," subject only to a few limitations on this discretionary power not pertinent to our inquiry. Minn.Stat. § 243.05 subd. 1 (1990). Pursuant to this discretionary power, the Commissioner issued administrative rules governing grants of parole. These rules incorporated all the release dates that had been set by the MCB prior to its dissolution and established a new agency, the Office of Adult Release ("OAR"), to make future decisions regarding parole. These new regulations do not provide for a yearly review of an inmate's release date, and they limit the OAR's discretion in changing an inmate's release date. Bailey claims that the failure of the new regulations to provide for an annual review of his release date—as was required under previous system—retroactively increases his punishment and thus contravenes the Ex Post Facto Clause.

Although this Court has not yet decided whether the federal parole guidelines are "laws" within the meaning of the Ex Post Facto clause, *see Yamamoto v. U.S. Parole Comm'n,* 794 F.2d 1295 (8th Cir.1986), we have noted with favor the decisions of other circuits holding that the federal parole guidelines are not "laws". *Id.* at 1299. We believe the reasoning used in those cases applies to the Minnesota parole regulations. "[T]he operative factor in assessing whether a directive constitutes a 'law'

for ex post facto purposes is the discretion that the [paroling authority] retains to modify that directive." *Smith v. United States Parole Comm'n,* 875 F.2d 1361, 1367 (9th Cir.1989). "The key to the finding that [federal parole] guidelines are guides merely, and not laws, is that the Parole Commission has a congressional mandate ... to exercise discretion.... How often that discretion is exercised is immaterial." *Inglese v. United States Parole Comm'n,* 768 F.2d 932, 937 (7th Cir. 1985) (citations omitted). "Applying the [ex post facto] rule to changes in parole administration ... would discourage the formulation and publication of administrative policies." *Prater v. U.S. Parole Comm'n,* 802 F.2d 948, 953 (7th Cir.1986) (en banc).

██ The Minnesota parole regulations are procedural aids to the body vested with the discretionary authority granted by the state legislature. The decision to promulgate the regulations first by the MCB and now by the Commissioner was itself a discretionary decision; neither was required by law to issue specific regulations. The "parole law" in effect at the time of Bailey's illegal acts was that the paroling authority of the state (the MCB) was free to parole any inmate, subject only to a few limitations. The "parole law" in effect now is still that the state paroling authority (the Commissioner) is free to parole any inmate. The only changes that have been made are that the power to parole has changed hands and that the paroling authority's internal regulations governing the exercise of that power have been modified. A change in the body vested with paroling authority is not a violation of the Ex Post Facto Clause; neither is a change in the manifestation of a discretionary power that itself has remained unchanged.[6]

---

**6.** To say, as does Bailey, that before the MCB was abolished the MCB had discretionary power and that now the OAR has no discretion, is misleading. The paroling authority of Minnesota has always been required to follow the promulgated regulations—the regulations established by the MCB allowed discretion in the paroling decision, while the current regulations allow no such discretion. At all times, the paroling authority has been obligated to adhere to the internal regulations promulgated pursuant to its discretionary authority, but at all times the paroling authority also has been free to modify its internal regulations. Indeed, the regulations issued by the Commissioner and now in effect recognize that "policy changes established by the commissioner" may affect an inmate's release date. Appellant's Addendum II at A78.

The majority of circuit courts agree with this conclusion. *See Resnick v. United States Parole Comm'n*, 835 F.2d 1297, 1301 (10th Cir.1987); *Vermouth v. Corrothers*, 827 F.2d 599, 604 (9th Cir.1987); *Sheary v. United States Parole Comm'n*, 822 F.2d 556, 558 (5th Cir.1987); *Prater*, 802 F.2d at 953–54; *DiNapoli v. Northeast Regional Parole Comm'n*, 764 F.2d 143, 146–47 (2nd Cir.), *cert. denied*, 474 U.S. 1020, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985); *Dufresne v. Baer*, 744 F.2d 1543, 1549–50 (11th Cir.1984), *cert. denied*, 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 49 (1985); *Warren v. United States Parole Comm'n*, 659 F.2d 183, 193–97 (D.C.Cir.1981), *cert. denied*, 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982); *Ruip v. United States*, 555 F.2d 1331, 1335–36 (6th Cir.1977). *Cf. Francis v. Fox*, 838 F.2d 1147, 1150 (11th Cir.1988) (a state work-release regulation issued pursuant to a statutory grant of discretionary power to the Corrections Department is not an ex post facto "law"). *But see Akins v. Snow*, 922 F.2d 1558, 1561 (11th Cir.1991), *petition for cert. filed*, 59 U.S.L.W. 3783 (U.S. May 9, 1991) (No. 90–1730) (a state paroling authority's regulations promulgated pursuant to a broad statutory grant of power to enact parole rules are subject to the ex post facto prohibition); *Royster v. Fauver*, 775 F.2d 527, 534 (3rd Cir.1985) ("This circuit, alone among all others, maintains that parole regulations may be laws for purposes of ex post facto analysis."); *Rodriguez v. United States Parole Comm'n*, 594 F.2d 170, 174 (7th Cir.1979) (holding a parole rule equivalent to a statute).

Because we hold that the Minnesota parole regulations are not "laws" for ex post facto purposes, we affirm the District Court's order granting the defendants summary judgment on Bailey's ex post facto claims.[7]

2.

Finally, Bailey argues that the District Court erred in granting summary judgment on his claims that he was denied due process by (1) defendants' failure to provide him with notice of and an opportunity to be heard at meetings of the MCB at which his release date was determined and reviewed, and (2) the MCB's conditioning its consideration of his parole on a future finding by the staff that he is no longer a danger to the public in general or to young females in particular. These claims were carefully considered and rejected by the District Court. We also carefully have considered them, find no material fact issues to preclude summary judgment, and conclude, as did the District Court, that these claims are without merit. We are satisfied that, as the court determined, Minn.Stat. § 243.05 (1976) and the Parole Decision-Making Guidelines adopted by the MCB did not give Bailey a constitutionally protected liberty interest in parole, and that in any event the process afforded him was constitutionally adequate. To the extent that his second due process claim is one of substantive rather than procedural due process, it is plain that a convicted criminal has no fundamental right to consideration for early release; the doctrine of substantive due process therefore affords Bailey no basis for relief. As these claims were properly disposed of by the District Court, we affirm without further discussion.

III.

To summarize, in number 89–5219 we affirm the District Court's denial of Bailey's application for writ of habeas corpus. In number 89–5403, we affirm the District Court's grant of summary judgment for defendants on Bailey's various section 1983 claims.

STUART, District Judge, concurs except as to part II.C.1., as to which he concurs in the result only.

---

**7.** Contrary to the dissent's assertion, the Commissioner's incorporation of the parole release dates previously set by the MCB does not equate with "postponing" Bailey's parole eligibility. *See post* at 1159 n. 1. The action of the Commissioner does not extend in any way Bailey's parole eligibility; it merely affirms the MCB's earlier decision. Thus, the Commissioner has not exceeded his delegated authority, as his actions do not violate Minn.Stat. § 243.05 subd. 1(d) (1990).

LAY, Chief Judge, dissenting.

I respectfully dissent. However, I do so only as to the majority's disposition of the ex post facto issue.

The majority does not challenge Bailey's assertion that the new parole regulations are more onerous to him, and clearly they are. Under the old regulations he was entitled to annual review of his parole date from an agency that had broad discretion to adjust that date. *See* Minn.Stat. § 243.05 (1972). Under the new regulations annual review is abolished and the OAR can review and revise release dates only to correct mathematical errors or in accordance with overall changes in policy. Minn.Rules 2940.1500 (1989).

Thus, the key issue for ex post facto analysis is whether Minn.Rules 2940.1500 constitutes a law. The majority addresses the ex post facto effect of the *federal* parole guidelines without giving proper consideration to the fact that this case involves entirely distinct *state* parole guidelines. The majority observes that a number of courts have held that the federal parole guidelines do not constitute a law for ex post facto purposes. *See, e.g., Prater v. United States Parole Comm.*, 802 F.2d 948, 953 (7th Cir.1986) (en banc). These cases have limited relevance because the federal guidelines are truly advisory—the parole commission may disregard the guidelines in the exercise of its own discretion. *See id.* at 954. In contrast, it is undisputed that the OAR is firmly bound by the Minnesota regulations and has no discretion to adjust release dates. *See State ex rel. Independent School Dist. No. 6 v. Johnson*, 242 Minn. 539, 548, 65 N.W.2d 668, 673 (1954). Cases cited by the majority emphasize that the existence of agency discretion to deviate from parole regulations is a key issue in determining whether the regulation constitutes a law for ex post facto purposes. *See, e.g., Smith v. United States Parole Comm.*, 875 F.2d 1361, 1367 (9th Cir.1988). Under this analysis the Minnesota regulations must be deemed law.

The majority seeks to circumvent this conclusion by finding discretion in the agency's power to revise its parole regulations. The majority in essence argues that the Commissioner of Corrections promulgated the regulations implemented by the OAR, and because the Commissioner (and previously the Minnesota Corrections Board) always has had discretion to revise the regulations, the entire parole scheme always has been subject to the Commissioner's unbridled discretion. Under this view, Bailey never had any entitlement to any of the parole procedures in existence at the time of his offense.

This theory ignores the practical realities of Minnesota's parole scheme. The only valid test for distinguishing a law from a guideline lies in considering the discretion of the agency invested with the delegated authority to affect the rights of the prisoner. *See Smith*, 875 F.2d at 1367. In this case that agency is the OAR, not the Commissioner. The practical effect of the Commissioner's new regulations is that the agency that determines Bailey's rights has been deprived of the ability it once had to advance Bailey's release date. It makes no difference whether that agency's discretion was curtailed by legislative or administrative action. Under the majority's reasoning every legislative act would be immune from ex post facto challenge because the legislative body always has the discretion to revise or repeal its actions. Under the majority's theory there are no true laws. Statutes passed by the legislature must then also be discretionary because the legislature may exercise its discretion to revise or repeal. This cannot be the law.

Contrary to the majority's assertions, the Minnesota regulations are not mere "procedural aids" to the OAR, nor can they be dismissed as "internal regulations." *See ante* at 1156. These regulations have the force of law on the OAR, the agency charged with actually making parole decisions. Thus, Minnesota's regulations have changed the rules to the detriment of the prisoner in a most tangible and concrete manner.

The majority's assertion that "[t]he majority of circuit courts agree with this conclusion," *ante* at 1157, is misleading. None of the courts in the cases cited by the

majority considered or adopted the novel theory advanced here. Indeed, all but one of the cited cases considered the federal guidelines, which are truly discretionary in every sense. The remaining case addressed an Alabama parole scheme which also appears to have invested significant discretion in the agency charged with making the parole decisions. *Francis v. Fox*, 838 F.2d 1147, 1150 (11th Cir.1988). The majority has not presented any support for its premise that administrative regulations binding on the agency charged with making parole decisions still may be deemed discretionary for ex post facto purposes.

The Seventh Circuit in *Prater* acknowledged that "[t]he rule against ex post facto laws applies to statutory changes and also (we may assume) to changes in administrative regulations that represent an exercise of delegated legislative authority, as opposed to an interpretation of legislation by an agency authorized to execute, not make, laws." 802 F.2d at 953–54. The majority concedes that the regulations at issue here are not interpretive but represent the Commissioner's exercise of delegated legislative authority. *See ante* at 1156 ("The Minnesota parole regulations are procedural aids to the body vested with the discretionary authority granted by the state legislature."). Thus, the majority goes far beyond precedent in finding that administrative exercise of even delegated legislative authority is not subject to the ex post facto clause.

The majority ignores the relevant part of our own decision in *Yamamoto v. United States Parole Comm.*, 794 F.2d 1295 (8th Cir.1986), in which we stated:

We recognize that some aspects of the parole process, while a matter of discretion, are such that a change in the parole process could violate the ex post facto clause.... Adverse changes in the frequency with which a prisoner may be *considered* for parole or in the time at which a prisoner first becomes *eligible for parole consideration* may also violate the ex post facto clause.

*Id.* at 1300–01 (emphasis in original); *see also Warden v. Marrero*, 417 U.S. 653, 662–63, 94 S.Ct. 2532, 2537–38, 41 L.Ed.2d 383 (1974) (stating that "a repealer of parole eligibility previously available to imprisoned offenders would clearly present the serious question under the ex post facto clause ... of whether it imposed a greater or more severe punishment than was prescribed by law at the time of the ... offense").

The ex post facto clause would have little effect if the legislature could accomplish through administrative action what it is prohibited from doing through legislation. Thus, it is imperative that binding administrative action be considered a legislative act for purposes of the ex post facto clause. In light of the above analysis I would find that the Minnesota regulations violate the ex post facto clause, and would order the state to provide Bailey parole review consideration pursuant to the regulations in place at time he committed his offense.[1]

---

1. It also appears that enforcement of a new parole regulation that had the effect of postponing Bailey's eligibility for parole would exceed the Commissioner's statutory delegation of authority under Minn.Stat. § 243.05 subd. 2(d) (1988). The statute provides that "any new rule or change of rule of policy adopted by the commissioner which has the effect of postpon-

ing eligibility for parole has prospective effect only." Because the new regulations effectively eliminate Bailey's eligibility for parole, the regulations must be deemed to postpone his eligibility for parole. Thus, the regulations are invalid as applied to Bailey, not only on ex post facto grounds, but on the state law ground that they exceed the Commissioner's delegated authority.