NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 9, 2013[*]
Decided December 10, 2013

**Before**

RICHARD  D. CUDAHY, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 13-2209

| | |
|---|---|
| TERRANCE EDWARDS, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 10-C-0729 |
| BELINDA SCHRUBBE, et al., *Defendants-Appellees.* | Lynn Adelman, *Judge.* |

**ORDER**

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

Terrance Edwards, a former inmate at Wisconsin's Waupun Correctional Institution, filed suit under 42 U.S.C. § 1983 claiming that prison medical staff were deliberately indifferent to his skin condition, vitiligo. The district court granted summary judgment for the defendants because, the court reasoned, the undisputed evidence establishes that the defendants responded appropriately to Edwards's condition. We agree with that conclusion.

Edwards, who is African American, initially saw a nurse in December 2007 after white patches of skin had appeared on his arms and legs. That nurse referred him to a nurse practitioner who, a month later, diagnosed Edwards with vitiligo, a condition in which skin cells fail to produce melanin, causing skin to lose its pigment and lighten. The nurse practitioner also drew blood to check for an autoimmune disorder. The results were negative. Over the next two years, Edwards sporadically complained that his vitiligo was spreading and met with staff to discuss his condition.

Three days after his 2009 annual physical examination—during which the same nurse practitioner had noted that his skin, despite the vitiligo, was "warm, dry, intact," and hydrated—Edwards again complained that his condition was worsening. The nurse practitioner met with Edwards and explained that no additional diagnostic test for vitiligo was available and that the drug he requested—psoralen, which sensitizes the skin for exposure to ultraviolet light as a means of camouflaging depigmented areas by darkening the skin—was unnecessary because his condition is not life threatening. She also gave him a nonprescription moisturizer to apply to the affected areas and referred him to a prison doctor for further consultation.

That physician met with Edwards and ordered a battery of blood tests to rule out an immunodeficiency as a contributing cause of the vitiligo. The results were negative. The doctor then informed Edwards that his vitiligo is "purely cosmetic" and that further treatment is not medically indicated. Months later, in 2010, Edwards again told medical staff that his vitiligo was spreading—from both biceps to other areas of his body including his nipples and genitals—and the same physician met with him to discuss the condition and answer questions. Edwards was transferred to New Lisbon Correctional Institution in 2011 where he remains incarcerated. His medical chart shows that in August 2011 staff at that facility concluded that no "simple quick fixes" exist, and that a steroid cream might be indicated if the vitiligo spreads to "cosmetically significant areas" including the face.

Before his transfer Edwards had filed this lawsuit naming as defendants the Health Services Manager at Waupun and the physician and nurses who treated him there. He alleged that his vitiligo has increased his risk of skin cancer and caused him to become depressed by the prospect that stigmatization will make finding employment difficult. At summary judgment the defendant physician submitted an affidavit attesting that Edwards's vitiligo is neither life threatening nor susceptible to "simple, quick or effective treatment." Edwards, who by then was represented by appointed counsel, did not submit contrary medical evidence. The district court concluded, based on the undisputed evidence, that Edwards's vitiligo is not a serious medical condition and that, even if it is, the defendants were not deliberately indifferent as they performed many diagnostic tests and provided adequate treatment.

On appeal Edwards first argues that his vitiligo, although not life threatening, is a serious medical need because the condition has left him "disfigured" and, he believes, at a higher risk of developing skin cancer. His fear about skin cancer may be unfounded, *see Self Care & Sun Safety*, AMERICAN VITILIGO RESEARCH FOUNDATION, http://www.avrf.org/facts/sun.html (last visited Dec. 1, 2013), but Edwards is correct that a medical condition can be serious without being life-threatening. A condition is serious if, left untreated, significant injury or unnecessary pain likely will result. *See Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011); *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). And though Edwards has never alleged that these defendants (or anyone else) have disregarded his depression, that mental illness is a possible side effect of vitiligo. *See Questions and Answers About Vitiligo*, NATIONAL INSTITUTE OF ARTHRITIS AND MUSCULOSKETAL AND SKIN DISEASES, (September 2013), http://www.niams.nih.gov/Health_Info/Vitiligo/; *Vitiligo*, MAYO CLINIC, (April 21, 2011), http://www.mayoclinic.com/health/vitiligo/DS00586. Thus, we cannot endorse the district court's assumption that Edwards's condition is not a serious medical need simply because it has not caused him "physical pain or injury."

But we do agree with the district court that the dispositive issue is not whether Edwards's vitiligo qualifies as a serious medical condition, but the absence of any evidence of deliberate indifference. The defendants monitored Edwards's vitiligo and investigated its underlying cause. And though the condition is obvious, Edwards introduced no evidence suggesting that the defendants disregarded a substantial risk of harm. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Instead, both the nurse practitioner and the physician understood that vitiligo might be caused by an underlying autoimmune disorder and ordered blood work to determine if it was. When all of the results came back negative,

the vitiligo was deemed to be cosmetic, which is typical. *See Questions and Answers About Vitiligo*, *supra*. The doctor testified that Edwards's vitiligo is not life threatening and that no effective treatment is available. In fact, medical staff aided Edwards in dealing with his vitiligo. During Edwards's visits the doctor and nurse practitioner discussed with him the condition's difficulties, answered his questions, and highlighted the importance of limited sun exposure for affected areas. They continued to monitor the vitiligo and provided him with moisturizer.

We can appreciate that Edwards thinks little of moisturizing lotion as treatment and desires an alternative to mask his vitiligo or at least control its spread. But the Eighth Amendment does not give him the authority to dictate specific treatment, and that is especially so in a case like this where the undisputed evidence establishes that, at least for Edwards, any available treatment would be cosmetic. *See Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997); *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993); *Bailey v. Gardebring*, 940 F.2d 1150, 1155 (8th Cir. 1991). Dissatisfaction with a course of treatment does not give rise to a claim of deliberate indifference; rather, deliberate indifference can be inferred only if a treatment decision was not based on an exercise of medical judgment. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Accordingly, the judgment is AFFIRMED.