Lehigh Valley Cooperative Farmers *v.* Commonwealth.

Argued September 6, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER and ROGERS. Judge BLATT did not participate.

*Robert G. Tallman,* with him *Butz, Hudders & Tallman,* for appellant.

*Edward T. Baker,* Deputy Attorney General, for appellee.

OPINION BY JUDGE KRAMER, November 14, 1972; Refiled April 5, 1973:

This is an appeal from an adjudication, dated April 29, 1970, of the Board of Finance and Revenue (Board) refusing to grant the prayer of the Petition For Refund of Sales Tax, filed by the Lehigh Valley Cooperative Farmers (Lehigh). The appeal was properly filed, originally, with the Court of Common Pleas of Dauphin County, and was subsequently transferred to this Court for final determination.

In lieu of a trial by jury before this Court, the parties entered into a Stipulation of Facts which adequately sets forth a description of the pertinent facts and the procedural aspects of this case. We adopt that Stipulation, and it reads as follows:

"1. Lehigh Valley Cooperative Farmers, hereinafter called Defendant, was formed under the provisions of the Agricultural Cooperative Association Act of April 30, 1929, P. L. 885, 15 P.S. §12151, as amended, for the purpose of processing and marketing milk produced by its 800 members. It maintains its principal place of business at 1000 North Seventh Street, Allentown, Pennsylvania.

"2. During the years 1964, 1965, 1966, 1967 and 1968, Defendant paid Sales and Use Tax on tangible personal property purchased by it, under the provisions of the Tax Act of 1963 for Education, Act of March 6, 1956, P. L. (1955), 1228, as amended by Act of May 29, 1963, P. L. 49, 72 P.S. §3403.

"3. During the years 1965 through 1969, Defendant was subject to and paid tax imposed by the Cooperative Agricultural Association Corporate Net Income Tax imposed under the provisions of the Act of May 23, 1945, P. L. 893, 72 P.S. §3420-21.

"4. During the years 1964 through 1969, Defendant paid $418,583. 03 in Sales and Use Tax as per schedules

filed with the Sales Tax Bureau, Department of Revenue, and the Board of Finance and Revenue of the Commonwealth of Pennsylvania.

"5. Defendant, during the period in question, received raw milk from farmers and processed the milk at its plants into various products, including fluid milk which is packaged or bottled for drinking, yogurt, cottage cheese, ice cream and similar dairy products. These products are then sold through Defendant's salesmen directly to consumers at their doors and also at wholesale to independent grocers, chain stores, and other retailers in the marketing area principally comprised of southeastern Pennsylvania. Defendant also sold directly to certain large hospitals and similar institutions for their own use.

"During this period, Defendant also sold butter, eggs, orange juice, and convenience foods which were not processed by it but purchased and resold and Defendant also operated a dairy bar at its processing plant. These additional activities constituted approximately one percent of its total sales.

"6. The proceeds of the sale of these products are then applied to the operating costs, dividends on preferred and common stock, appropriate reserves for depreciation and other requirements, and the balance is then paid to the dairy farmer patrons for the milk which they had delivered to the Defendant (although advance payments are made to the farmers, usually based on the Federal Milk Market order prices).

"In addition, the Defendant acquires, exchanges, interprets and disseminates information related to dairy farming such as economic, statistical and market data and information as to the past, present and prospective herds. Similarly, it advises its members in respect to adjusting their gross and prospective production of milk in relation to the prospective volume of consump-

tion, sale price and existing or potential surplus of milk and dairy products in the market place. It also provides inspection services for herds and dairy farm facilities so as to insure compliance with all sanitation and health laws of the various areas and makes available information to enable compliance with these laws.

"During the years in question (April 1964 to April 1969) the number of members shipping milk through the association dropped 37% from approximately 1,300 to 800. During these same five years, Lehigh Valley Cooperative Farmers had total sales of $226,000,000.

"7. For the period February 1, 1964 to September 30, 1964, Defendant owned and maintained a herd of dairy cattle. The herd was used solely for the purpose of breeding and as a service to Defendant's members. Although a charge was made for this service, it was not covering the operating costs and this was one of the reasons the herd was sold on September 30, 1964. The herd was not used at any time in the general production of milk and served only as a service to individual members of Defendant in the improvement of their own herds.

"8. On April 30, 1969, Defendant filed a Petition for Refund with the Bureau of Taxes for Education, Department of Revenue, for refund of Sales and Use Taxes paid for the period April 30, 1964 to April 30, 1969. The Bureau of Taxes for Education did not act on Defendant's Petition for Refund within the time provided by law and thereby the Petition was denied.

"9. On December 24, 1969, Defendant filed its Petition for Review with the Board of Finance and Revenue and after hearing thereon, the Board of Finance and Revenue by its order dated April 29, 1970, refused Defendant's Petition."

We are here concerned with sales taxes voluntarily paid during the subject period by Lehigh on purchases

of tangible personal property by it, and the resulting claim for a refund for all such taxes paid for the period, under the provisions of the Act of March 6, 1956, P. L. (1955) 1228, art. V, Section 553, as amended, 72 P.S. 3403-553.

There can be little question that the sales tax paid by Lehigh under the Tax Act of 1963 for Education, Act of March 6, 1956, P. L. (1955) 1228, as reenacted and amended, 72 P.S. §3403 et seq., is an excise tax. The question which has been raised by Lehigh is whether it is exempt from the payment of the sales tax by virtue of the Cooperative Agricultural Association Corporate Net Income Tax Act, Act of May 23, 1945, P. L. 893, 72 P.S. §3420-21 et seq. Lehigh relies on the language of the Act, which states in pertinent part: "Every association shall be subject to, and shall pay for, the privilege of doing business in this Commonwealth, or having capital or property employed or used in this Commonwealth, by, or in the name of itself, or any other person, partnership or association, a State excise tax at the rate of four per centum (4%) per annum upon each dollar of net income, *which tax shall be collected in lieu of any other excise tax including corporate net income tax or property tax. The property shall be free from any county tax excepting tax on real estate.*" (Emphasis added.) Section 3 of the Act, 72 P.S. §3420-23.

The Commonwealth (Board), however, takes the position that because the Tax Act of 1963 for Education (Sales Tax Act) is a later statute which contains certain specific exemptions, including the purchase of certain agricultural and dairy personal property, that it was the intent of the Legislature not to exclude the purchases of personal property by an agricultural cooperative such as Lehigh. In effect the Commonwealth would have us conclude that the Sales Tax Act repealed

by implication the exemption granted by the Agricultural Association Corporate Net Income Tax Act.

We must first point out, this Court has stated in *Pittsburgh v. P.U.C. and Duquesne Light Company*, 3 Pa. Commonwealth Ct. 546, 284 A. 2d 808 (1971), that there is a presumption against implied repeal. *See* the Statutory Construction Act, Act of 1937, May 28, P. L. 1019, Section 91, 46 P.S. §591.

We are further guided by the Statutory Construction Act, 46 P.S. §563, wherein it is stated: "Whenever a general provision in a law shall be in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the *manifest* intention of the Legislature that such general provision shall prevail." (Emphasis added.) That same Act, at 46 P.S. §551, states: "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. . . ."

Our very careful review of the above-quoted section of the Agricultural Association Corporate Net Income Tax Act (72 P.S. §3420-23) and all of the provisions, especially the exemption provisions of the Sales Tax Act, leads us to conclude that the Legislature did not intend the general provisions of the Sales Tax Act to eliminate the very specific exemption provided for agricultural cooperatives, such as Lehigh, under the 1945 Agricultural Association Corporate Net Income Tax Act.

Our Superior Court, in the case of *Waynesburg Borough v. Van Scyoc*, 204 Pa. Superior Ct. 565, 205 A. 2d

683 (1964),[1] gives us some guidance in reaching this conclusion. The court there said: "[W]e interpret the section of the Cooperative Agricultural Association Corporate Net Income Tax Act to mean that the tax of 4 per cent provided for therein is to be in lieu of any other excise tax, including the corporate net income tax or any other property tax that the *Commonwealth* might have levied or should levy in the future. . . ." (Emphasis in original.) 204 Pa. Superior Ct. at 569, 205 A. 2d at 684. We have no reservations that the Legislature has placed agricultural cooperatives in a more advantageous position than other corporate organizations of a similar nature, because the Legislature patently intended to encourage the raising, producing, and marketing of agricultural products in this Commonwealth. The Board would have us imply a repeal of the exemption granted by the Legislature in the 1945 Act. In view of the fact that the Statutory Construction Act tells us that we must find a "manifest" intention to repeal, as noted above, we cannot and do not interpret the general provisions of the Sales Tax Act as repealing the exemption granted to Lehigh.

We now turn to the second question which has been presented to this Court, and that is whether Lehigh may claim a refund for sales taxes paid over a three-year period or a five-year period. Lehigh contends that it is entitled to a refund for a five-year period by virtue of subsection (d) of Section 553 of the Sales Tax Act (72 P.S. §3403-553(d)), which reads as follows: "(d) Notwithstanding any other provision of this section where any tax, interest or penalty has been paid under a provision of this act subsequently held by final judgment of a court of competent jurisdiction to be unconstitutional, or under an interpretation of such

---

[1] Vacated on grounds not relating to merits, 419 Pa. 104, 213 A. 2d 216 (1965).

provision subsequently held by such court to be erroneous, a petition for refund may be filed either before or subsequent to final judgment, but such petition must be filed within *five years* of the date of the payment of which a refund is requested. The department shall have jurisdiction to hear and determine any such petition filed prior to such final judgment *only* if, at the time of filing of the petition, *proceedings are pending* in a court of competent jurisdiction wherein the claim of unconstitutionality or of erroneous interpretation, made in the petition for refund may be established, and in such case, the department shall not take final action upon the petition for refund until the judgment determining the question involved in such petition has become final." (Emphasis added.)

The Commonwealth contends that because no proceedings were pending at the time that the petition for a refund in this case was filed, subsection (d) is not applicable, but rather subsection (a) of that same section is applicable. Subsection (a) reads: "(a) Except as provided for in section 556 and in subsection (b) and (d) of this section, the refund or credit of tax, interest or penalty provided for by section 552 shall be made only where the person who has actually paid the tax files a petition for refund with the department within three years of the actual payment of the tax to the Commonwealth. Such petition for refund must set forth in reasonable detail the grounds upon which the taxpayer claims that the Commonwealth is not rightfully entitled to such tax, interest or penalty, in whole or in part, and shall be accompanied by an affidavit affirming that the facts contained therein are true and correct. The department may hold such hearings as may be necessary for the purpose at such times and places as it may determine, and each person who has duly filed a refund petition shall be notified by the

department of the time when, and the place where, such hearing in his case will be held."[2]

In *Box Office Pictures, Inc. v. Board of Finance & Revenue*, 402 Pa. 511, 166 A. 2d 656 (1961), the Pennsylvania Supreme Court established that a refund petition for taxes voluntarily paid is in the nature of an attempt to sue the Commonwealth. That the Commonwealth cannot be sued without its consent is not in issue here. *See* Art. I, Section 11 of the Pennsylvania Constitution. However, as the Court in *Box Office Pictures* made clear, the Board has only that power and jurisdiction which is provided by the Legislature, and therefore the statutory sections involved must be strictly construed.

With these principles in mind, we note that subsection (d) does state that in the absence of a final court decision the Department of Revenue (and thereafter the Board) will have jurisdiction under that section *only* if at the time of the filing of the petition there is then pending in a court of competent jurisdiction proceedings questioning the constitutionality or the interpretation of the tax. No such final decision or pending case has been brought to our attention.

Prior cases involving subsection (d) indicate that a taxpayer must show clearly that a Board interpretation of the Act was held to be erroneous by a court of competent jurisdiction. Inferences or dicta drawn from a prior case are not sufficient to invoke Section 553(d). *See Commonwealth v. Manbeck, Inc. (No. 2)*, 45 D. & C. 2d 549 (1967). *See also Commonwealth v. C. J. Langenfelder & Sons, Inc.*, 84 Dauph. 70 (1965). Therefore, it is clear to us that Lehigh, under a strict inter-

---

[2] It should be noted that in 1967 the Legislature amended subsection (a) by increasing the time for filing from eighteen months to three years which thereby extended the rights of the taxpayer for refunds.

pretation of this subsection, may not claim a refund for the five-year period. We conclude that Lehigh could only file a petition under subsection (a) of Section 553 and is entitled to a refund for only a three-year period prior to the filing of its Petition for Refund. We are aided in reaching this conclusion by the ruling of the Pennsylvania Supreme Court in the case of *Finance Company of Pennsylvania v. Board of Finance & Revenue*, 433 Pa. 549, 252 A. 2d 374 (1969), where the Court was presented with the same question as found in Section 503 of The Fiscal Code, Act of April 9, 1929, P. L. 343, art. V, Section 503, as amended, 72 P.S. §503. Section 503 of The Fiscal Code contains very similar statutory language with relation to the period within which one may claim tax refunds. In *Finance Company, supra*, the Court said:

"The bases for the Board's action were that at the time appellant filed its petition for refund, no court proceedings were pending which permitted appellant to invoke the five year filing periods under §503(a)(4) of the Fiscal Code, supra, 72 P.S. §503(a)(4), and that the appellant's subsequent filing of such appeals before the five year periods had expired did not impart a new light to the petitions. We agree with the Board.

"The statutory refund provision is quite precise. It lengthens the refund filing period from two years to five years when the ground for the refund is a court decision. It permits the filing of the refund petition even before the court decision is rendered, in fact, so that the taxpayer may protect his rights in the event the decision is favorable to its claim. This early filing privilege may be claimed, however, '*only* if, at the time of the filing thereof, *proceedings are pending* in a court. . . .' whereby the merit of the situation will be determined." (Emphasis in original.) 433 Pa. at 557, 252 A. 2d at 377.

In summary we hold that Lehigh is entitled to a refund, for a period of three years prior to the filing of its petition, for sales taxes paid to the Commonwealth, and therefore, the adjudication of the Board of Finance & Revenue is reversed. Accordingly, we enter the following

ORDER

AND Now, this 5th day of April, 1973, it is ordered, that the Order of this Court dated February 23, 1973, is amended, with respect to the years 1964 and 1965; judgment is hereby directed to be entered in favor of the Commonwealth in the amount of $193,752.61; and with respect to years 1966, 1967 and 1968, judgment is hereby directed to be entered in favor of Lehigh Valley Cooperative Farmers in the amount of $281,247.39.