**Stanley STEWART, Petitioner,**

v.

**PENNSYLVANIA BOARD OF PROBA-TION AND PAROLE and Department of Corrections, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 9, 1998.

Decided June 24, 1998.

Stanley Stewart, petitioner, for himself.

Arthur R. Thomas, Harrisburg, for respondent.

Before DOYLE and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

DOYLE, Judge.

Before this court in our original jurisdiction are preliminary objections filed by the Department of Corrections and the Pennsylvania Board of Probation and Parole (collectively, Respondents) to a petition for review filed pro se by Stanley Stewart (Petitioner), an individual incarcerated at State Correctional Institution–Graterford (SCIG).

In his petition Petitioner asserts that Respondents have established arbitrary policies that deny inmates parole solely on the basis of their original offenses so that Respondents may "gain proceeds" from the state and federal governments. He seeks declaratory and injunctive relief on the basis of violation of his constitutional rights.

■ Specifically, Petitioner avers that he was convicted of robbery and sentenced to serve four to ten years effective July 17, 1992. Petitioner's sentence status change report also reveals a one to two year underlapping sentence for simple assault. He was reviewed for parole in November of 1997 and the Pennsylvania Board of Probation and Parole (Parole Board) denied parole in a decision recorded on January 6, 1997. It listed the following reasons for refusal:

1. Substance Abuse

2. Assaultive Instant Offense

3. Weapon Involved in the Commission of an Offense

4. Your Need for Vocational Training

5. Unfavorable Recommendation from the Department of Corrections

Although Petitioner does not assert that any of the above statements are false per se, he does aver that despite the stated reasons he was denied parole only because he has been classified as a violent offender and that his parole denial is based only upon the crimes

of others, including Robert "mudman" Simon.[1]

■■■ Respondents have filed several preliminary objections to the petition for review,[2] and we conclude that, except for the demurrer and the lack of original jurisdiction, the objections have been waived on the basis that Respondents failed to brief them.[3] Thus, we confine ourselves to the question of whether Petitioner has stated a cause of action. A demurrer may only be sustained when on the face of the complaint the law will not permit recovery. *Stone & Edwards Insurance Agency, Inc. v. Department of Insurance*, 151 Pa.Cmwlth. 266, 616 A.2d 1060 (1992), *affirmed*, 538 Pa. 276, 648 A.2d 304 (1994). All well-pled allegations must be accepted as true. *Id.*

Petitioner asserts several specific constitutional violations in his petition for review, and we shall consider them seriately. First, however, some background is necessary to understand the basis for Petitioner's claims.

## FEDERAL HISTORY

In 1996, Congress substantially revised a prior 1994 law dealing with federal grants to states that have or would implement correctional policies and programs, including truth-in-sentencing laws that ensure that violent offenders serve a substantial portion of their sentences behind bars. Under the 1996 amendments to what is commonly known as the Violent Incarceration and Truth–in–Sentencing Incentive Grants Act (Federal Act)[4]

these federal grants can be used by qualifying states to build and expand correctional facilities to increase the bed capacity for violent offenders, to build or expand temporary or permanent correctional facilities such as boot camps in order to create more space for non-violent offenders so that suitable existing prison space can be used for violent offenders, and to build or expand jails. 42 U.S.C. § 13702. The Federal Act creates two types of grants, violent offender incarceration grants and truth-in-sentencing initiative grants.

To be eligible for a Violent Offender Incarceration Grant:

[A] State shall submit an application to the Attorney General that provides assurances that the State has implemented, or will implement, correctional policies and programs, including truth-in-sentencing laws that ensure that violent offenders serve a substantial portion of the sentences imposed, that are designed to provide sufficiently severe punishment for violent offenders, including violent juvenile offenders, and that the prison time served is appropriately related to the determination that the inmate is a violent offender and for a period of time deemed necessary to protect the public.

42 U.S.C. § 13703(a).

In addition, there are additional grant monies available to states that can demonstrate an increased percentage of persons sentenced and time served, 42 U.S.C. § 13703(b), and for states that can demon-

---

1. We take judicial notice that Robert "mudman" Simon, a violent criminal, was paroled by Pennsylvania and that shortly thereafter he then killed a New Jersey Police Officer while on parole. There resulted an investigation of Pennsylvania's parole system by the Senate of Pennsylvania's Judiciary Committee which then made recommendations that Pennsylvania's philosophy should be changed from a client centered corrections one which emphasizes rehabilitation of the offender to one emphasizing public safety, deterrence of crime and incapacitation of criminals. *Chairman's Report*, "Investigation into the Parole of Robert Simon," Senate of Pennsylvania Judiciary Committee (February 1996). Within ten months of the issuance of this report, changes to the paroling philosophy in the state, as will be hereinafter discussed, were enacted.

2. Previously the Court allowed Petitioner to amend defective service, which he corrected, and

therefore that particular preliminary objection was overruled by an order of Court dated December 18, 1997. The Court, therefore, has already disposed of that preliminary objection.

3. One of Respondents' preliminary objections, lack of subject matter jurisdiction on the basis that Petitioner seeks habeas corpus relief, although not briefed, cannot be waived. We, thus, will dispose of it. Although Petitioner's prayer for relief includes language indicating that he seeks release on parole, to suggest that habeas corpus is the gist of his petition is a gross oversimplification of the petition. Thus, we will overrule that preliminary objection on those grounds.

4. 42 U.S.C. §§ 13701–712.

strate an increased rate of incarceration and percentage of sentence served. 42 U.S.C. § 13703(c). "Violent crimes" (referred to as "part 1 violent crimes") in the Federal Act are defined as "murder and nonnegligent manslaughter, forcible rape, robbery, and aggravated assault as reported to the Federal Bureau of Investigation for purposes of the Uniform Crime Reports...." 42 U.S.C. § 13701(2).

Truth–in–Sentencing Incentive Grants are eligible to a state that demonstrates to the U.S. Attorney General that:

(1) such State has implemented truth-in-sentencing laws that-

(A) require persons convicted of a part 1 violent crime to serve not less than 85 percent of the sentence imposed (without counting time not actually served, such as administrative or statutory incentives for good behavior); or

(B) result in persons convicted of a part 1 violent crime serving on average not less than 85 percent of the sentence imposed (without counting time not actually served, such as administrative or statutory incentives for good behavior);

(2) such State has truth-in-sentencing laws that have been enacted, but not yet implemented, that require such State, not later than 3 years after such State submits an application to the Attorney General, to provide that persons convicted of a part 1 violent crime serve not less than 85 percent of the sentence imposed (without counting time not actually served, such as administrative or statutory incentives for good behavior); or

(3) in the case of a State that on April 26, 1996 [date of the amendment to the Federal Act] practices indeterminate sentencing, with regard to any part 1 violent crime-

(A) persons convicted of a part 1 violent crime on average serve not less than 85 percent of the prison term established un-

der the State's sentencing and release guidelines; or

(B) persons convicted of a part 1 violent crime on average serve not less than 85 percent of the maximum prison term allowed under the sentence imposed by the court (not counting time not actually served such as administrative or statutory incentives for good behavior).

42 U.S.C. § 13704(a).

With this background to the Federal Act in mind, we shall now consider Petitioner's arguments.

## DUE PROCESS CLAIMS

 Petitioner's first constitutional claim is that he has been denied due process of law.[5] He reasons that Pennsylvania has not enacted a Truth–in–Sentencing Law and, therefore, that the Commonwealth is proceeding under subsection (3) of Section 13704 of the Federal Act. That subsection, as hereinbefore stated, pertains to states practicing "indeterminate sentencing"[6] and petitioner argues that Pennsylvania no longer does so, relying on Section 9721(e) of the Sentencing Code, 42 Pa.C.S. § 9721(e). He thus asserts that Pennsylvania has no authority to participate in the federal grant programs and that the unauthorized use of these programs by the state constitutes a denial of due process to him insofar as it serves as an across the board basis for parole denial for violent offenders until they have served at least 85 percent of their prison terms.

Section 9721(e) of the Sentencing Code provides:

**Term of Imprisonment.**–All sentences of imprisonment imposed under this chapter shall be for a *definite* term. (Emphasis added.)

Petitioner construes this language to mean that Pennsylvania no longer practices indefinite sentencing. However, Section 9756 of

---

**5.** *U.S. CONST. amend. XIV, § 1.*

**6.** Indeterminate sentencing, as used in this Section of the Federal Act, is defined as:
a system by which-
 (A) the court may impose a sentence of a range defined by statute; and

(B) an administrative agency, generally, a parole board, or the court, controls release within the statutory range....
42 U.S.C. § 13701(1).

the Sentencing Code, 42 Pa.C.S. § 9756, which relates to sentences of total confinement, such as petitioner's, provides:

(a) **General rule.**-In imposing a sentence of total confinement the Court shall at the time of sentencing specify any maximum period up to the limit authorized by law and whether the sentence shall commence in a correctional or other appropriate institution.

(b) **Minimum sentence.**-The court shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed.

. . . .

Further, Section 21 of what is commonly known as the Parole Act, Act of August 6, 1941 P.L. 861, *as amended,* 61 P.S. § 331.21, provides:

The board is hereby authorized to release on parole any convict confined in any penal institution of this Commonwealth as to whom power to parole is herein granted to said board, except convicts condemned to death or serving life imprisonment, whenever in its opinion the best interests of the convict justify or require his being paroled and it does not appear that the interests of the Commonwealth will be injured thereby. The power to parole herein granted to the Board of Parole may **not be exercised in the board's discretion at any time before, but only after, the expiration of the minimum term of imprisonment fixed by the court in its sentence** or by the Pardon Board in a sentence which has been reduced by commutation. . . .

(Emphasis added.)

The provisions of Section 9756 of the Sentencing Code and Section 21 of the Parole Act clearly envision a scheme of *indefinite* sentencing as defined in Section 13704(3) of the Federal Act. In addition, the two state statutes together also fit the definition of a "Indeterminate (indefinite) sentence" as espoused in *Black's Law Dictionary* 1363 (6th ed.1990), which gives as a definition, *inter alia,* "A sentence to incarceration with a spread of time between a minimum date of parole eligibility and a maximum discharge date." We thus conclude that Pennsylvania

does have an indefinite sentencing plan and, therefore, can proceed to seek qualification for grants under Section 13704(3) of the Federal Act.

Having so held, however, we must address Petitioner's assertion that Section 9721(e) of the Sentencing Code establishes that Pennsylvania is a state with a definite rather than an indefinite sentencing scheme.

■ A definite sentence is defined as a:

[s]entence calling for imprisonment for a specified number of years as contrasted with indeterminate sentence which leaves duration to prison authorities (*e.g.* parole boards) and good behavior of prisoner.

*Black's Law Dictionary* 423 (6th ed.).

First, we note that it really is not to Petitioner's full advantage to argue for a definite scheme, because in such a scheme, **there is no parole.** Thus, he would be required to serve his full maximum sentence in jail. In any event, however, we do not read Section 9721(e) to establish a definite sentence requirement, but rather a definite *term* requirement. By that we mean that a defendant must know definitely what his term is. In this case, petitioner's term is definite. His minimum term is four years; his maximum term is ten years. What we believe the legislature intended by Section 9721(e) was simply to avoid a situation where a term of confinement is unknown to the defendant such as where the sentencing judge would order, for example, that a defendant serve "three years to whenever the court feels he should be released." That scenario would present an indefinite term and would not be permissible under Section 9721(e). Clearly, we do not have that here and, consequently, we reject Petitioner's argument that Pennsylvania is a definite sentencing state. It is for this reason that Pennsylvania can apply for grants via Section 13704(3) of the Federal Act.

■ In a related due process argument, Petitioner asserts that by adhering to a policy of denying parole to violent offenders at the expiration of their minimum sentences solely on the basis of their original offenses, the board has, in essence, illegally extended

their minimum dates. Keeping in mind the standard for ruling on a demurrer, we must take as true Petitioner's averments that the Parole Board has such a policy and that any other reasons stated for denial of parole were arbitrary. Doing so, we then reach the critical question of whether the Parole Board can have such a policy without violating Pennsylvania's sentencing scheme and the Parole Act which appear to envision not a right to parole at the end of the minimum term, but certainly a right to be considered for parole at that time.

There is no question that the nature of the offense is a factor that the Parole Board may take into account when reviewing a parole request. Section 19 of the Parole Act, 61 P.S. § 331.19, requires the Board in granting paroles to consider, *inter alia*, "the nature and character of the offense committed." The precise question is whether that factor **alone** can be used to deny parole **as a matter of general policy** despite other factors that the Parole Board is directed to take into account including, *inter alia*, a parole applicant's conduct while in prison. *See id.* In order to consider this argument, we must go behind the reasons stated for the parole refusal. This we are precluded from doing under *Weaver v. Pennsylvania Board of Probation and Parole*, 688 A.2d 766 (Pa.Cmwlth. 1997). We said there that as long as the factors cited by the Parole Board for its parole denial are facially relevant, and here they clearly are, we will not inquire further

into the matter. Additionally, because the policy is grounded upon a valid statutorily-based reason for parole denial, we cannot conclude that it is unconstitutional on its face on a theory of denial of due process, as Petitioner asserts. In essence, the Parole Board has chosen to give great weight to one statutorily enumerated factor, and we believe that it has the discretion to give one factor great weight or even the entire weight. Moreover, parole reviews continue to be conducted and clearly the Parole Board retains the discretion to vary from the policy. Thus, we do not believe that the policy impermissibly acts to extend minimum sentences.

## CRUEL AND UNUSUAL PUNISHMENT

■ Petitioner also argues that the policy constitutes cruel and unusual punishment under the Eighth Amendment[7] to the U.S. Constitution. However, the mere fact that a petitioner is not paroled, is not a basis for a conclusion of cruel and unusual punishment because, contrary to Petitioner's alternative argument that he has a right to parole,[8] parole is not a right in Pennsylvania, *Reider v. Pennsylvania Board of Probation and Parole*, 100 Pa.Cmwlth. 333, 514 A.2d 967 (1986), so the mere act of refusing parole cannot be cruel and unusual punishment.

## SUPREMACY CLAUSE

■ Petitioner next asserts a Supremacy

---

7. *U.S. CONST. amend. VIII.*

8. In support of his argument that there is a right to parole in Pennsylvania, Petitioner first presumes Pennsylvania requires definite sentences, which we have just explained is incorrect, and second, he relies on Section 9756(c) of the Sentencing Code, 42 Pa.C.S. § 9756(c), which provides:

**Prohibition of parole.**-Except in the case of murder of the first degree, the court may impose a sentence to imprisonment without the *right to parole* only when:
(1) a summary offense is charged;
(2) sentence is imposed for nonpayment of fines or costs, or both, in which case the sentence shall specify the number of days to be served; and
(3) the maximum term or terms of imprisonment imposed on one or more indictments to run consecutively or concurrently total less than 30 days. (Emphasis added.)

Because Petitioner does not fall within any of the exceptions enumerated, he maintains that subsection (c) affords him a right to parole. It is clear from the Parole Act itself, and the case law interpreting it, that parole in Pennsylvania is not a right, but a matter of grace. *Reider.* Section 9756(c) of the Sentencing Code and the Parole Act must be read in *pari materia*, Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932, and must be construed so that all provisions in both acts can be given effect if possible because there is a presumption against implied repeal of statutes. *Lehigh Valley Cooperative Farmers v. Commonwealth*, 8 Pa.Cmwlth. 18, 305 A.2d 908 (1972). Therefore, we read Section 9756(c) of the Sentencing Code to mean that, for defendants such as Petitioner, who do not fall within the enumerated exceptions, the court must impose a sentence with a right *to be considered for* parole.

Clause [9] violation and maintains that he has a federal right to be free from arbitrary and capricious parole decisions. In addition to this court's longstanding holding in *Reider* that parole denial is not an adjudicatory act reviewable by this Court, and its rejection of intermediate appellate court federal law that holds that parole refusals are subject to review,[10] it is clear that Petitioner has no independent federal right to parole and, therefore, the Supremacy Clause is simply inapplicable here.

## EQUAL PROTECTION

■ Next, Petitioner asserts that the Board's policy violates the Equal Protection Clause.[11] That clause prohibits a state from denying "any person within its jurisdiction equal protection of the law." This prohibition, however, does not preclude the creation of different classifications for treatment of individuals provided that such classifications are reasonable and based upon differences having a fair and substantial relationship to the goal of the classifications so that those similarly situated are treated the same. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920). Because Petitioner does not allege that violent offenders are a suspect class and does not allege the deprivation of a fundamental interest, the appropriate inquiry for equal protection purposes is whether the classification bears a rational relationship to a legitimate governmental purpose. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The purpose of the inquiry is not to test the wisdom of the government's decision, but merely whether the decision is rational. *Parham v. Hughes*, 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979).

■ Section 1 of the Parole Act, 61 P.S. § 331.1, which enunciates the state's public policy concerning parole, was amended by the legislature in 1996 to provide that "the board shall first and foremost seek to protect the safety of the public...." No similar language appears in the previous version of this Section. Thus the legislature has sent a message to the Parole Board that public safety is now the paramount issue in parole decision-making. It is obvious that those who commit violent crimes are a danger to the public at large and the fact that this policy would serve to keep individuals who have committed such offenses behind bars longer, whether to deter recidivist conduct, or to punish for violent crimes severely enough to cause others to give serious thought before committing such crimes in Pennsylvania, or both, are rational bases for the policy. Thus, we conclude that there is no equal protection violation here.

## EX POST FACTO

■ Finally, Petitioner argues that implementation of the Parole Board's policy to him and others who were sentenced prior to the Board's implementation of the policy constitutes an Ex Post Facto Clause [12] violation. A law will be considered ex post facto if it imposes a punishment for an act not punishable when committed or imposes additional punishment to that then proscribed. *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).

The rule against ex post facto laws has two purposes. *Prater v. United States Parole Commission*, 802 F.2d 948 (7th Cir.1986). First, it allows individuals to go about their business without fear of being punished for an act not prohibited when it was committed. *Id.* The theory is that by providing advance notice, behavior can be influenced not only by labeling an act a crime, but also by the severity of the punishment imposed for it. *Id.* However, as Judge Posner wrote:

> [I]f all that has changed is the vigor with which the criminal laws are being enforced, reliance is unlikely and the ex post facto argument fails. Settled expectations regarding the vigor of enforcement are unreasonable. No one thinks that if the police step up their patrolling of a highway so that the probability of being caught for

---

9. U.S. CONST. art. VI, § 2.

10. *Weaver* (rejecting *Burkett v. Love*, 89 F.3d 135 (3d Cir.1996)).

11. U.S. CONST. amend. XIV, § 1.

12. U.S. CONST. art. I, § 10.

speeding is much greater, speeders ought to be able to appeal to the ex post facto principle to avoid being punished if they are caught under the new regime. The Constitution does not entitle people to use lapses in enforcement to escape punishment when law enforcement becomes more effective.

*Id.* at 953.

■ The second reason for the rule is to keep the legislative branch out of the executive and judicial roles of prosecution and punishment. *Id.* Accordingly, the rule applies to acts of the legislature. According to Judge Posner, there is, however, a significant reason not to apply the rule to the guidelines of an executive agency:

> Because few statutes are completely self-enforcing, it is inevitable that executive, judicial, and administrative officers will have some discretion with regard to interpretation or enforcement and therefore that the severity of enforcement will vary over the life of the statute. The risk of such variance is inherent in the decision to commit a crime; it cannot be feasibly eliminated. If whenever law enforcement becomes more severe one of the ex post facto clauses is violated, then whatever degree of mildness or severity enforcement officials adopt will be the ceiling on what their successors can do; the discretion of enforcers will be truncated.

*Id.* at 952. Consequently, the weight of federal authority has concluded that *federal* parole guidelines are not "laws" for purposes of ex post facto. *See Bailey v. Gardebring,* 940 F.2d 1150 (8th Cir.1991), *cert. denied,* 503 U.S. 952, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992). In so doing, the operative legal inquiry has been whether parole authorities retain discretion to modify the guidelines. *Id.* Thus, because the federal parole commission has a Congressional mandate to exercise discretion, the majority of federal circuit courts have concluded that the commission's standards are not laws within the meaning of the Ex Post Facto Clause.[13] In the case presently before us,

because Petitioner avers that it is the Parole Board's policies and not a legislative act which are preventing his parole, and because, as with the federal parole commission, the Parole Board has a statutory mandate to exercise its discretion, we conclude that the policy at issue here is not a "law" for ex post facto purposes.

■ Even assuming, however, that the policy in question were a "law" for ex post facto purposes, Petitioner could not prevail. We recognize that many defendants enter into plea bargains with the expectation that they will be paroled at the end of the minimum term. Thus, a policy which disfavors early parole for violent offenders could be said to affect the opportunities for early parole of those offenders. Although *Weaver* does suggest that lost opportunities might be a basis for an ex post facto violation, the Supreme Court in *California Department of Corrections v. Morales,* 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), has retreated from some of the broad language in *Weaver* and has indicated that merely because an inmate is disadvantaged by a legislative change or because a statutory amendment affects an opportunity to take advantage of early release provisions, there is no constitutional violation and that the relevant inquiry since the Court decided *Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), is whether the change at issue alters the definition of criminal conduct or enhances the penalty by which a crime is punishable. *Morales,* 514 U.S. at 506 n. 3, 115 S.Ct. 1597.

In *Morales,* the legislative change at issue decreased the frequency of parole suitability hearings for multiple murderers. The High Court concluded that the change, when applied to those who had committed crimes and been sentenced prior to the effective date of the amendment, did not violate the Ex Post Facto Clause because, inter alia, California parole authorities continued to retain discretion to review multiple murderers for parole eligibility at an earlier date if an inmate's particular circumstances warranted it. Simi-

---

**13.** As the *Bailey* Court noted, " '[h]ow often that discretion is exercised is immaterial.' " *Bailey,* 940 F.2d at 1156 (quoting *Inglese v. United States*

*Parole Commission,* 768 F.2d 932, 937 (7th Cir. 1985)).

larly here, the fact that the Parole Board has allegedly adopted a policy allowing it to comply with the percentages established in the Federal Act, does not preclude the Parole Board from exercising discretion in individual cases to override any "presumption of parole denial" for a violent offender. Indeed, the Federal Act only requires an **average** number of parole denials.

Accordingly, because we conclude that the policy does allow for individual review within the confines of federal strictures, we conclude that under *Morales* no constitutional violation exists.

### CONCLUSION

Having concluded that Petitioner has not stated a cause of action, we will sustain the demurrer and dismiss the petition for review.

### *ORDER*

**NOW**, June 24, 1998, Respondents' preliminary objection to the lack of original jurisdiction is overruled. The preliminary objection in the nature of a demurrer is sustained and the petition for review is dismissed.